We're happy to hear your argument in our third case, Tillery v. Piedmont Airlines. Good morning, may it please the court. Present for the plaintiff, Appellant Michael Tillery, Zorindja Dali, along with Stephen Chirkoff, amicus from Mawila. Michael Tillery, my client, is also present here. He's an African-American male who was employed by the defendant, Piedmont Airlines, from 2006 to March 20, 2014. He is also the Vice President of Communication Workers of America from 2012 after the time of his termination on March 20, 2014. As the Vice President of Communication Workers of America, he engaged in various protected activities under employment law on behalf of his colleagues until the end of 2013 and early 2014. At the time of his termination, Tillery was 67 years old. Piedmont Airlines terminated Tillery on March 20, 2014, when they alleged that on March 18, 2014, he had an unauthorized communication with the pilots and the flight crew to keep four passengers on board a flight, resulting in a no-assault situation. They then terminated him only because of his unauthorized communication with the pilots. Naturally, there's also a voice recording between the pilot and the individual that spoke with the pilots, Mr. City Barr, an African male from the Ivory Coast, age 28, with a very distinct Ivory Coast accent. It was Barr who was communicating with the pilots, and it was Barr who had authorized the four passengers to stay on board. Tillery did not communicate with the pilot, and during his various hearings from March 2014 to June 26, 2014, he continuously protested the false admission by Piedmont Airlines that he had communicated with the pilots. Yet despite this very serious breach, no one was terminated other than the plaintiff, Michael Tillery. Barr was not written up nor suspended. There was another person at the operations room, Conway Lee, an Asian male in his 30s. He was also not written up nor suspended. There was only one employee who was terminated, Mr. Tillery. The lower court held that Tillery had made a prima facie case for age discrimination but could not rebut the legitimate reasons offered by the employers on account that his supervisors were of his age, and the ageist comments by Lisa Hyde were only made once. The former, also known as the same actor, inferences an incorrect application of the law. In the case from the Supreme Court in offshore services. Was Ms. Hyde involved in the decision to terminate Mr. Tillery? She upheld the termination, and I believe on Joint Appendix 227, I questioned her, did you upheld the termination? Answer, correct. So yes. Who initially made the decision to terminate Mr. Tillery? It was players. I don't know whether anybody played 20% of it versus another played 30% of it. There were basically interoperative responses provided by Piedmont Airlines. There were Robert Berg that were involved in the termination. It was my understanding that below you stipulated that, or agreed that Ms. Hyde was not involved in the decision to terminate Mr. Tillery. Is that not? It's a DNOA review, and so I don't know whether at that point. You're stuck with the record. The record also says in her deposition that she upheld the termination. But you agreed. Is my colleague incorrect with what the record shows? I believe I stipulated it in the statement of undisputed facts. Having said that, in my memorandum opinion, I did not stipulate to that. So that's my response to that. Also, Mr. Tillery's deposition, which I believe starts from page 627 of the Joint Appendix, he testified in his deposition that Lisa Hyde was present for the remainder of his hearings from March 2014 to June 2014. Going back to the Supreme Court case of Arnicle, where the Supreme Court held that the same act of inference was a basis to deny the age discrimination claim. Like I mentioned, in Arnicle that was not the case, which involved a case of same-sex marriage. The lower court also held that we cannot rebut Piedmont's legitimate reasons, that notwithstanding Tillery did not communicate with the pilots, he still cannot show pretext because Piedmont reasonably relied on this false admission. And that really is the crux of our appeal in here. The so-called honest belief defense. Under Supreme Court precedence, it is sufficient that when in here we have shown that their reasons are false, i.e., they lied, a jury can infer the ultimate fact of intentional discrimination, and no other proof should be required on our end. And we've shown that conclusively. How does it play into your analysis that Mr. Tillery was on a final warning for other events that had occurred? And the fact that he did make a mistake. I'm sorry? He did make a mistake. He didn't make, in this particular incident, he made a mistake. He didn't make the mistake that was reported that he made. I'll answer Judge Keenan's question. Well, you have both of those combined. Yeah, I'll answer Judge Morse's question then first. No, you can answer in any order you want. You're both there. Responding to your question, Judge Morse, that was an admission that was attributed by the defense, that Mr. Tillery, or rather it was attributed to, that's what Kingara testified, that this was an operation-wide failure, and Mr. Tillery had some part to play in it. It's also important to note, and that's on JA 785, that's their first writing on this. At no time on JA 785, which is the writing when they first wrote him on March 18th, did they mention that this was an operation-wide failure. When they first wrote him up, they only mentioned that Mr. Tillery did not communicate with the pilots. My client's position is that, no, this was not, no, that he had nothing to do with this failure. And in fact, if we were to look at- Wasn't he supposed to at least communicate with the gate as to what was going on? No, and again, that's- Okay, there's the A side and the B side. Yes. Okay, they attributed it to one, which do they originally attribute this error to? They said that he committed an error on which side? Sure. Which side? B side. B side. And actually, his error was on the A side. He was not on the A side. Siddy Barr was on the A side. That's what I just asked you. Which side was he on? He, on that day, he was working on the B side. Okay, and they- Go ahead. No, but as in working on the B side, he was responsible for communicating, was he not with the gate crew? No, he was not. That Mr. Barr had authorized passengers to board the plane. That's what your briefs say. Well, I don't believe my brief said that he was authorized to communicate with the gate crew. I believe- Right, well, what is somebody working on side B, what are they supposed to be doing when they're working on side B? When on side B on this day, and this is, you know, we can actually go to- Just tell us what somebody on the B side does. Somebody on B side, they're supposed to be communicating with the ramp. They're supposed to be communicating with the operations. They're also supposed to be communicating with- With the operations. The operations is, I believe, other airlines that are docking their planes. At the gate? At the gate, sure. Okay. They're also, yes, are they supposed to be communicating with the gate? Sure. Was he- All right, then, so we can stop there. So, on that day, he didn't communicate with the gate, which goes back with, to Judge Motz's question, that he did make a mistake on that day. Certainly, it wasn't the mistake that they accused him of, but he did make a mistake, just not the mistake that they blew it up to be. Two years later, they confirmed that that was the mistake he made after going through- Okay, so he did make a mistake. Okay. And then that goes- Let's get back to Judge Keenan's question, which started this whole inquiry, which I believe was, didn't he have a history of a disciplinary record before this? And- The answer to that question is yes. I also asked during the time of the deposition, what was the trigger for his termination? And we also need to review his past disciplinary history and contacts. We can't review them in isolation. But we do know he was on final warning. We do know he was on final warning, yes. We also do know, based on the affidavits by Howard and Gordon, that there was constant chatter by people on airlines as to whether he was responsible for any flight delays. And we need to get rid of Mr. Michael Tillery. So, you're in your rebuttal. I'm sorry? And you've also given some time to your colleague. Now, you can use up his time, or you can use up your rebuttal time. I will. But you can't just talk. All right. Thank you, Judge. Good morning. Amicus is here to speak against the so-called honest belief argument, which operates only at summary judgment after there's credible evidence of pretext. In a subset of cases where an employer, like this one, is essentially compelled to admit they got it wrong the first time, the honest belief argument presents a second bite at the apple to say, even though he didn't do what we originally accused him of, it was an honest mistake. That is an entirely appropriate argument to make at a jury trial. It is not appropriate for summary judgment. Can I interject? Did the honest belief argument come in when, yes, he didn't do what we said he did, but he did something else that was wrong? Well, it's still a very... I thought the honest belief argument was, he didn't do what we said he did, and he didn't do anything wrong. It's still a second bite at the apple, and it's a significant change. I'm going to ask you, when it comes in. You say it comes in at every time. Is that what you're saying? We're saying that at summary judgment, whether an employer's mistaken, a false statement is honestly held, is never an appropriate summary judgment determination. They can always argue honest mistake to a jury. Okay. But here, did the employer have to rely on honest mistake since there was a basis that he did do something wrong, just not what they said was wrong? I had understood it was when they made an honest mistake that you had done something wrong, but correct me. Tell me. Well, the court below invoked honest belief citing an unpublished district court opinion. I don't think the employer should have, but they, in fact, did invoke the so-called honest belief argument. And there's a significant change here because they initially claimed that whoever... They didn't have to invoke it. I don't think it's ever appropriate to be invoked at summary judgment because it requires... But they didn't have to in this instance. Is that what you're saying? They could have made their argument, well, we had a basis for our action here. Yes, they could have, and they have done so, but they would have also had to deal with the fallout of having changed the nature of the decision. But the records... It's undisputed in the record that he actually did make the mistake. Not the mistake that they originally said, but another mistake. Right, but what's also undisputed... At the same time, in the same flight. What's also undisputed is that the man working the A side who made the original decision that allowed the four passengers to stay on, which was the exception. That was the first domino in what happened. Did the records tell us that that man had the same record that Mr. Tillery did? That is, that he was on final warning or whatever it is? No, and final warning is a significant fact. However, Mr. Baugh, who made the initial exception to let the four passengers stay on, when that was not the normal procedure, suffered zero write-up. He didn't get any corrective action, even the lowest level of corrective action, and yet in the initial stages of this case, Mr. Tillery was told, this is a very serious infraction to let those four passengers stay on, make that exception, and you're going to be fired for it. Now, it's a totally plausible argument that a person on final warning can be fired for a relatively minor next infraction. That's a plausible argument. But if it is, in fact, a minor infraction, then the person who did make that call should have suffered a minor write-up, a first-level write-up. And the record, as I understand it, is that Baugh suffered zero write-up. And so the change in position is significant. If Baugh, who did talk to the flight crew and did authorize the four passengers to stay on as an alteration of normal procedure, got zero consequence, it calls into question whether the employer's new explanation, all right, he didn't talk to the flight crew, he wasn't working A-side, but he forgot to tell the gate crew of Baugh's conversation, fine, but Baugh should also have some consequence. Without that consequence, that change in order becomes an explanation after the fact, a post hoc rationalization for a decision already made. And that's where... Is it, in your view, evidence of pretext? It can be. It's up to a jury. There are competing inferences to be drawn. They are free to argue to a jury that this man was hanging by a thread on final warning and it wouldn't take much, but they need to answer that there are another inference to be drawn, which is what we originally accused him of and said in writing was such a serious violation to let four passengers stay on, the person who actually did that had nothing. Well, what about the fact that this employee, Mr. Tillery, when he filed his complaint, was unable to identify the person who spoke the allegedly discriminatory remarks concerning his age and his race. And then a year later, after a motion for summary judgment was filed, pointing out this deficiency, then filed a further statement saying that, yes, the response was, excuse me, the comment was made by a decision maker in the case. How does... Again, it seems to me that that was something that the district court was entitled to consider. The fact when he filed his complaint, somebody said this about me, but I don't know who, just Danielle Montadego told me that. And then once the opposing counsel pointed out the defect in the analysis not attributable to a decision maker, he then files an affidavit or a statement saying, oh, yes, it was a decision maker. It was Freddie Loudon. I don't think that goes to the honest belief issue that I'm focusing on. No, no, it's a different... And you're only here to address honest belief. No, you don't want to. That is my... You're not... I'll take a stab at it but recognize it's just beyond what I... No, that's okay. No, that's okay. Fair comment. What I would like to address in the remaining time... I'll be asking him about that when he comes back up. This is the third time our organization has filed an honest belief. We filed in the Sharif case and in the Villa v. Cava Mezzi. Villa v. Cava Mezzi in dicta went further than we were comfortable with in endorsing the honest belief rule. I want to speak to that. Of course, the holding in Villa v. Cava Mezzi wasn't adopting honest belief. Right. The holding was premised on that the plaintiff in that case conceded that the employer did in fact have an honest belief and that there was no pretext. That is, the employer who fired a supervisor for passing on a complaint of harassment, the employer in that case honestly believed it was a false complaint at the time it acted. They sincerely relied on it. They did not change their story. And so, the holding of Villa does not impact us. However, in the discussion of honest belief, there are a couple of paragraphs that suggest that the honest belief argument should be adopted. And I want to make sure we address that. It should not be because in every case you're free to argue to a jury that you made a mistake. That's always at issue. But once the reason given is a pretext, once there's evidence on a summary judgment record, which is a cold record, that the employer's original explanation that they offered in the second stage of McDonnell Douglas is false, is not worthy of belief, the Supreme Court has made it clear that then there are competing inferences to be drawn from that falsity in every case. And that needs to be presented to the jury to decide whether it was an honest mistake or whether it was not an honest mistake. So you're saying that honest belief is the flip side of pretext and since you're taking the evidence in the light most favorable to the plaintiff you cannot inject that into the analysis. Exactly, Your Honor. And we cite the Jacobs case for that as well. That there are often competing versions and you must credit the plaintiff's evidence for the maximum value and disregard the moving party's evidence on summary judgment. Are there any further questions? And your time is expired too. Thank you very much. May it please the court. Peter Pettish appearing on behalf of Appali, Piedmont Airlines The district court's thorough opinion granting summary judgment should be affirmed and I'd like to start with some of the very core factual predicates for it. As the court has noted Mr. Tillery was at the very end of his rope on progressive discipline   displacement and a flight delay principally due to a lack of communication. There were four passengers on the flight and there were four passengers on the plane and there were four passengers on sitting on the plane and the gate didn't know that they were on there. But the principal lack of communication wasn't Mr. Tillery's it was Mr. Bach's wasn't it? There are two positions as the court has noted the A side and the B side and these two the A side and the B side sit together. The A side is responsible for communicating with the ramp with the aircraft. But wasn't he terminated based on the false conclusion that it was his voice on the recording that allegedly told the passengers to stay on the plane and also based on the fact that someone said that he admitted that he'd done it? Let me let me address both of those Your Honor. First of all there was no available recording at the time and that was the uncontested testimony. There was there's no issue of material fact. The testimony was that the recording was not available at that time to make the decision. So what the decision makers Why wasn't it available? Technological problems. So it's still not available? It had been cleared up and then there was a recording subsequently that was produced to Mr. Tillery and the voice on the recording was the voice of Mr. Bach. But that wasn't known to the recorders at the time of the termination decision. What was known and what they relied on was the statement from the manager on site Mr. King-Gara which said Mr. Tillery admitted responsibility for it and that this was a serious matter Why wasn't Mr. Bab or Bob or whatever his name is disciplined at all for this serious matter? Well because of the method of dropping the ball on the plane and the B side Mr. Tillery's side being responsible for communicating with the gate if Mr. Ba and he did authorized the passengers authorized the crew rather to keep the passengers on board the plane had that information been communicated to the gate like it was supposed to be nobody would have dropped the ball there wouldn't have been displaced passengers But when you thought when Appley thought that it was Mr. Tillery who had made that mistake Correct They terminated him When they ultimately found out it wasn't him it was Mr. Ba they didn't do anything to Mr. Ba Correct So explain that Sure The simple explanation is that it would have been no harm no foul had Mr. Ba said we're keeping the passengers on the plane Mr. Tillery's job was then to communicate that onto the gate it was the gate's lack of information Right but why isn't this evidence of pretext in the light most favorable to the plaintiff if the plaintiff excuse me if Mr. Ba made a mistake which it turned out to be that no action whatsoever was taken against Mr. Ba Because the real mistake was the gate's not knowing about the passengers being on board Right but they thought the real mistake was made by Mr. Tillery right Sure they thought the mistake was that he told them to stay on board and didn't tell the gate what was going on so these passengers After the fact that's not that's it seems to me Appley's story for why it was terminated is has changed and why isn't the changing story the evolving story the we had we didn't have the recording now we have the recording the disputes as to whether or not he admitted that he made any mistake why isn't that sufficient to overcome a motion for summary judgment because he they acted on the best information available at the time they had the statement from the supervisor the best information they said gave them a basis to terminate correct this defendant the final flaw was the lack of communication to the gate well then why didn't they say when they were looking at Mr. Hillary the first time and they thought that he did this well the real problem was lack of communication to the gate so we at least have to discipline Mr. Babb in some way well they fired him well Mr. Tillery's job was not to be communicating with the plane that was Mr. Babb's job to be doing that so by communicating with the plane Mr. Babb was doing his job Mr. Tillery is the one who dropped the ball by not then letting the gate know what was going on but the initial assumption based on the report from the supervisor on hand when he reported that Mr. Tillery accepted blame for the passenger displacement and the delay the assumption was that he was already breaching procedure by communicating with the plane in the first place because he wasn't supposed to be in the B position so they didn't even need to get to the fact that he didn't spread it to the gate so are you saying that Mr. Babb did something wrong as ultimately determined no it wasn't wrong for him to have done that had that information been communicated by the B side to the gate it was one rational approach to dealing with those passengers Mr. Babb did not do anything wrong after all sitting in the A position nor was he on a final decision Mr. Tillery had done what it turns out Mr. Babb did you thought it was grounds to fire him I'm sorry when Mr. Tillery did what it turns out Mr. Babb did you thought it was grounds to fire Mr. Tillery because he wasn't supposed to be in the B side communicating with the aircraft to tell the passengers to stay on board and the passengers stayed on board and the gate didn't know hence the debacle I have a feeling that you are playing the game where you're moving the cards around and you know we will know this record so I think that it sounds to us like Mr. Babb was not even disciplined for what they thought was the right  to do on the record to reflect that Mr. Babb was disciplined for that that is correct your honor so how can we then not say that there is a suggestion of pretext because again Mr. Babb's job at this time was to communicate with the plane communicate with the crew rather and the crew asked the A and B side the nerve center what do we do with these four passengers as it turns out learning way after the fact that the four passengers were on board this debacle never would have happened because we'll read the record and we'll make what determination we make but I think that that this is a problem for you so that if we should conclude that they wanted to terminate Mr. Tillery they initially said they were terminating him for the thing that they did not even discipline Mr. Babb for do you do you lose this case no okay why not because they acted on the report that was in front of them at the time the information in front of the decision makers was first of all that he communicated with with the plane and the other part of his job was to tell the gate and we didn't even have to get to that point because he wasn't supposed to be communicating with the plane in the first place the second part is the report from the manager on hand who Mr. Tillery testified had no reason whatsoever to be discriminating against him said that Mr. reported on to the decision makers that Mr. Tillery admitted blame for what had happened so with that in front of them they acted upon it as his testimony and subsequently because he needed to be communicating that onto the gate why did they need the recording at all then because there was a miscount he as side B didn't communicate it to the gate correct the you don't you don't even need to worry about this recording he didn't do his job you're saying now that is correct that's what you say now but then he was terminated because of this recording that how long did it take to correct the technical difficulty with the recording it's not clear when the recording became available it was sometime between the end of March and the time when his grievance hearing post termination grievance hearing occurred in June of 2014 so it was within that time frame you never asked your client that strikes me as a really odd really thing you would ask it was turned over to Mr. Tillery in the grievance process and I don't know the precise date within that but the horse was out of the highway labor act and if there was any irregularity with the grievance process that's a wholly different set of remedies okay I've asked you this once already but I'll try to ask it a different way does your case rise and fall on whether we think that the employer appropriately disciplined Mr. Bob as well or not disciplined that their conduct with respect to him was fair in light of the way that they treated Mr. Tillery do you have any other arguments on that factual issue no in to win this case yes and what are those arguments well the arguments go to both as the employment lawyers have addressed the honest belief rule other than the honest belief rule do you have anything else well Mr. Dolly has also raised in his brief but not below the shifting explanations defense well that doesn't help try to show pretext but it was waived what arguments do you have affirmative arguments do you have that you should win other than what we've discussed that Mr. Tillery was on his final warning and hanging on a string and that he did in reality bear responsibility for this passenger displacement we were ultimately correct but the fact of the matter is we didn't make a discriminatory decision because we acted on the best information in front of us at the time from Mr. Tillery's perspective for example my colleague raised with the other side the issue of the district courts could the district court have initially relied on trying to get exactly what Judge Keenan's question was the plaintiff statement that he didn't know who had made the discriminatory statements but only came up with them later does that have any separate legs for your argument I'm trying to tease out your argument and maybe there just isn't any argument that's fair to say to me no we rise and fall on what I've already said well we partially rise and fall on what we already said the statement attributed later very late in the game to Mr. Loudon a comment came again after Mr. Tillery filed an EEOC charge he had filed a complaint he had even testified in his deposition about comments attributed to other people that were perhaps racially or age based charged but none by a decision maker and then finally finally in an affidavit at the very end he attributes a terrible racial slur to Mr. Loudon even though he was asked at his deposition I think it's in pages 710 and 711 of the joint appendix is there any other reason that you can think of why you believe that anyone discriminated against you Mr. Tillery now it would occur to I would think any plaintiff to say well somebody said the most notorious racial slur possible but he didn't say that at his deposition and so that cynical affidavit filed in opposition to summary judgment shouldn't be taken into account as Judge Brinkema noted in her opinion so I'm trying to distill what your ultimate point is you're saying your ultimate point is you don't have evidence of a decision maker showing bias correct because this was a late breaking thought this was a late breaking thought that there was there were denials all along there was never any testimony in depositions in pleadings ascribing a comment of that nature to any of the four stipulated decision makers see if you can clear up for us did Mr. Ba have a performance lapse when he communicated with the gate crew we understand that Mr. Tillery on the B side didn't do what he was supposed to be doing it was discovered late did Mr. Ba have a performance lapse it was a that's a yes or no isn't it it really isn't because the sin lies in the gate not knowing that these four passengers were on board you're saying Mr. Ba did not have a performance lapse and if you are talking  a performance lapse the greater lapse was by Mr. Tillery because he has admitted and the record is clear it's uncontested his job was to communicate with the gate I don't mean to keep interrupting but I just want to focus on Mr. Ba no I want to answer your question you do say that Mr. Ba had a performance lapse and there is no explanation in the record for why Mr. Ba was not written up for that lapse there is no explanation in the record on that but the greater sin again was not greater sin but why isn't the failure to take any action against Mr. Ba for what concededly is a performance lapse not some evidence of pretext because he was not on a final warning and a lapse of that nature is curable by communicating on a final warning did Mr. Ba get any disciplinary a warning then there is no evidence in the record that he didn't no we don't know whether he got is that what you're saying that well I think we are assuming from the record I'm asking what the record shows that he did not get a warning and I believe there may have been I didn't hear your answer I believe there may have been testimony that he did not receive a warning so there is record evidence I believe there is you don't know where that is not not at this time are there any further questions I have nothing further thank you just quickly to answer Judge Mott's question about whether there's any record about Barr being disciplined it's on joint appendix 78 line 17 Barr does not recall being written up for the March 18 2014 incident joint appendix 81 line 10 Barr was never called to any grievance hearing also on the March regarding the March 18 2014 incident Mr. Daly what about the the late breaking affidavit that the district court held against you yes certainly one year earlier Mr. Tillery didn't have a clue as to who made the statement the defendant files motion for summary judgment says nothing here implicating a decision maker case should be dismissed and then he files an affidavit saying oh yeah it was a decision maker Mr. Loudon said it why shouldn't why wasn't the district court entitled to consider that as a pretty serious element in the case I believe that that cause of action was in regards to this hostile work environment claim which is not on appeal in regards to that allocation that suddenly Mr. Tillery is alleging Mr. Loudon used the N word I thought that the state wasn't the statement that they were talking about was that he said he was not going to let the union run this station that this is just some blank blank monkey see monkey do that Michael is doing yes exactly and that yeah and that was the statement that I think is the basis of his affidavit which Mr. Tillery made in the affidavit not at the time of the deposition uh specifically at the time of his deposition Mr. Tillery did mention that Loudon told me I'm not going to let the union run the station the part that but the racially tinged remarks came up at the time attributable to Loudon only at the time of the affidavit so why couldn't getting back to my question then why couldn't the district court say I've got a problem with this case because you know you filed the case said you didn't know who was saying it and now one year later when the case was closed the court said    saying it and now one year later when the case was closed the court said you didn't know who was saying it and while we were certainly preparing the affidavit I asked him some questions and my client said oh incidentally yes this is what Mr. Loudon  it has happened more than once before we don't allow depositions I mean we don't allow affidavits after the fact to contradict well and there's a wealth of law about that and to be and I do not have the page numbers here with me I actually anticipated this question so I should have my apologies if you were to look at the deposition questioning by defense counsel in regards to discriminatory remarks made by other decision makers at least that's how I when I was reading the deposition of Mr. Tillery and the questioning by Mr. Peter Patch it wasn't quite conclusive that there were no other discriminatory remarks made by Loudon in this case so which was why when we submitted the opposition to the MSJA and the affidavit we I thought it was a good time to supplement the record for lack of a better word are you saying that the record will show that Tillery said in his brief okay you're saying it's in your brief then don't take your time yes yeah and I just want to be sure that those two sites that you gave us at the beginning of your argument your reply 78 and 81 are the whole and complete record evidence that you're relying on with respect to city bar mr. bar yes okay yes also just just quickly about what is what is you know who was whether the a-side was supposed to communicate with the gate or whether it was the b-side I asked that very specific question what is the proper procedure in this instance and I asked this question to Robert Berg who's the director of stations joint appendix 106 and this is what Robert Berg the director of stations on joint appendix 128 says a-side upon communication from pilots from the pilots should have communicated with the manager Bernard Kingara Linces Julian and the PLC which stands for passenger operations control again page 128 line 14 to 16 at that time POC POC should have coordinated with the gate managers or other managers including Bernard Kingara and Linces Julian page 130 line 11 through 13 if the pilot calls the a-side this is in square parentheses the a-side coordinates with unit manager and maybe POC again on 130 unit manager Kingara have radios they should be able to get he should be able to get a hold of this information I also asked this information this question to Bernard Kingara because he also heard that the communication with the pilots and Kingara's testimony on this is on joint appendix page 289 he says he heard about the four passengers staying on board he deemed it was a normal day and did nothing with this information and again if we go back to Bernard Robert Berg Robert Berg says that upon communication from pilots the a-side should have communicated with Kingara that also did not happen so and also and of course as we know Bard did not get written up I don't believe Kingara did I never asked him that question but I don't believe it did there's certainly nothing to record that anybody other than Mr. Tillery got written up on this I believe my time is up if there are no further questions Mr. Tillery's deposition was taken after the first amendment complaint was filed correct yes and the first amendment complaint had some statements in it and then during his deposition he's not directly asked about monkey see monkey do however he was asked whether the person that assertedly said that had ever said anything racially offensive to his face and Tillery did not mention the monkey see monkey do comment or anything else yes and I think that the question was in regards to Montevigo I think but that's who it said in the first amendment complaint that made the statement has he changed his mind now in the deposition no no and again the first I filed the first amendment complaint for a very specific reason it was because at that time Piedmont complained you can just talk to us you don't have to talk to the audience I understand because at that point Piedmont had filed a motion to dismiss saying that I had filed my complaint after 90 days that was an EEOC issue that's fine but the first amendment complaint is taken before the deposition right yes it's also not a verified complaint so thank you very much we will come down and greet the lawyers and then go directly to our last case
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker